## STATE v. EVANS MACKLIN.

(Filed 14 October, 1936.)

**1. Criminal Law I j—**

On motion to nonsuit in a criminal prosecution, the evidence must be considered in the light most favorable to the State.

**2. Homicide H b—Evidence held sufficient for jury on question of defendant's guilt of murder in the first degree.**

The evidence favorable to the State tended to show that deceased, a chief of police, was shot from ambush with a shotgun and instantly killed, that defendant had been arrested several times by the chief, and on the last occasion had been released about 7:00 o'clock, that after his release defendant went to his room and procured a single barrel shotgun, took it to another's house and hid it underneath the steps, that he went into the house and drank some whiskey and then left, stating he was going to kill the chief, that he was seen to get the gun from under the steps and start in the direction of the scene of the crime some two miles distant, that the killing took place some two hours and forty-five minutes thereafter, at about 3:00 o'clock in the morning, that after the crime was committed officers found a single barrel shotgun in defendant's room which defendant said he was keeping, and that defendant stated to a witness after the commission of the crime that he had told him he was going to kill the chief. *Held:* The evidence made out a case of willful, deliberate, and premeditated killing, and the evidence tending to identify defendant as the perpetrator of the crime was sufficient to be submitted to the jury and overrule defendant's motion to nonsuit.

**3. Homicide G d—Gun found in defendant's possession held properly exhibited in evidence upon testimony tending to identify it as fatal weapon.**

It was established deceased was killed with a shotgun. After the crime was committed, a single barrel shotgun was found in defendant's room, and there was testimony that the gun was like the one defendant was seen carrying the night deceased was shot. *Held:* Defendant's exception to the exhibition of the shotgun in evidence cannot be sustained.

APPEAL by defendant from *Cranmer, J.,* at April Term, 1936, of HALIFAX. No error.

The defendant was convicted of murder in the first degree, and from judgment imposing sentence of death, the defendant appealed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*W. B. Allsbrook for defendant.*

DEVIN, J. The defendant bases his appeal from the judgment pronounced upon two assignments of error, one to the court's refusal to

allow defendant's motion for judgment of nonsuit, and the other to the court's action in permitting the State to offer in evidence as an exhibit the shotgun with which the State contended the deceased was slain.

The motion for judgment of nonsuit invokes the rule laid down in *S. v. Beal,* 199 N. C., 278, and other cases, that the evidence must be considered in its most favorable light for the State. Succinctly stated, the evidence disclosed that about 3:00 a.m., 16 February, 1936, the deceased, A. P. Moore, then chief of police of Scotland Neck, North Carolina, was shot down and almost instantly killed; that this occurred in front of the bank on a principal street in Scotland Neck; that the weapon used was a shotgun, fired from a distance of eight or ten inches, penetrating the right collar bone of deceased and severing his jugular vein; that there was an open vestibule at the entrance to the bank building, two steps up; that the course of the shot appeared to be slightly downward, indicating that deceased was shot from the ambush of the bank vestibule; that deceased had with him a dog, and that the sound of the fatal shot was followed by the howling of the dog.

It was further in evidence that the defendant had been arrested Saturday, 15 February (the day preceding the homicide), and released about 7:00 o'clock p.m.; that deceased as chief of police had arrested defendant two or three times, the last time two or three weeks before; that later, on the night of the 15th, about 11:00 or 12:00 o'clock, defendant went to his room at the house of a man named Dancy and got a single-barreled shotgun and six shells; that he then went to the home of a man named Williams, put the gun under the steps, and procured and drank some whiskey; that he left there about 2:15 a.m., the 16th, with the gun, fired it twice, and left, going in the direction of Scotland Neck, some two miles distant, saying he was going to kill Mr. Moore that night; that he also said, "I am not only going to kill Mr. Moore but Sheriff Johnson if I see him"; that on Tuesday following the homicide he told witness Augborn, "I told you I was going to kill that —————" (referring to deceased), "and I would have killed his dog but he ran. I did it, and you better not tell it either"; that about 5:00 a.m. (the 16th) defendant went into the house of one Idell Jones, and when asked about having been arrested the previous evening, said, "The ————— that locked me up will not lock me up any more"; that about the same hour another witness, who lived close by, testified she saw a shotgun under the house, a gun like the one exhibited at the trial; that she did not see the defendant put it there, but that she saw him go and get the gun and carry it away from there when he went; that defendant said to another witness, referring to deceased, "I made up my mind he would not arrest me any more"; that an officer went to the room of defendant on Thursday following the shooting and found a single-barreled shotgun; that he

showed the gun to the defendant and he said it was a gun he had been keeping. This gun was produced in court and offered as an exhibit.

The evidence made out a case of willful, deliberate, and premeditated killing, and there was evidence, sufficient to warrant its submission to the jury, identifying the defendant as the perpetrator. *S. v. Ammons,* 204 N. C., 753; *S. v. Marion,* 200 N. C., 715; *S. v. Lawrence,* 196 N. C., 562.

The only other exception was to the admission of the shotgun as an exhibit in the case. It was competent to show the possession of a shotgun by defendant about the time of the homicide, and it was testified that the one found in his room was like the one with which he had been seen on the night the deceased was shot. This exception cannot be sustained. *S. v. Burno,* 158 N. C., 632; *S. v. Vann,* 162 N. C., 534. The charge of the court was free from error.

There were no other exceptions noted to the ruling of the court, but we have examined the record with care in view of the gravity of the result to the defendant, and in the trial we find

No error.