STATE OF NORTH CAROLINA v. HARLEY CHAPPELL

No. 7418SC960

(Filed 19 February 1975)

**Criminal Law § 75— statements at crime scene — no custodial interrogation — absence of Miranda warnings**

Statements made by defendant in response to questions by an officer making an on-the-scene investigation of a death by shooting were not the result of custodial interrogation and were properly admitted in evidence although defendant had not been given the *Miranda* warnings before he made the statements.

APPEAL by defendant from *Lupton, Judge.* Judgment entered 14 June 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 24 January 1975.

Defendant was charged with murder, but the State elected to arraign the defendant on the charge of murder in the second degree or such lesser offense as the evidence might warrant. Upon a plea of not guilty, the jury returned a verdict of guilty

State v. Chappell

of voluntary manslaughter in violation of G.S. 14-18. From judgment sentencing him to be imprisoned for a term of eight years, with a recommendation for work release, defendant appealed.

State's evidence tended to show that at approximately 5:00 a.m. on 20 January 1974, a police officer investigated a call reporting a shooting at 803 Worth Street in High Point, North Carolina; that defendant admitted the officer at that address and in response to the officer's question, "Who got shot?", defendant pointed out the deceased's body; that when the officer asked "where was the gun", the defendant directed him to a bedroom dresser drawer where the officer found a .38 caliber pistol; that when the officer asked what had happened, defendant looked at the officer and said, "I shot the son of a bitch and he deserved what he got and I would do it again." It was stipulated that a .38 caliber bullet in each lung of the deceased was the cause of his death, but the State offered expert medical testimony concerning the death wounds. The doctor also testified that in his examination, he found spermatozoa present at the penis of the deceased.

The defendant testified that the deceased came to his house on 19 January 1974 at approximately 9:00 p.m. and the two of them sat and drank for some period of time; that deceased went to the bathroom several times that evening and that the last time deceased went to the bathroom, defendant heard his wife holler "get out of here". Defendant further testified that he went to the bedroom and discovered that his wife was across the bed wearing a bra with her panties down around her knees; that defendant's wife told him that the deceased had pulled her clothes off; that deceased then reentered the bedroom and put his hand on defendant's wife's private parts, whereupon defendant went for his pistol and shot the deceased in the hand; that deceased then came at the defendant and defendant again fired at him two or three times. Defendant testified that his wife "is a paralytic" and introduced a letter explaining that his wife has a right hemiparesis with weakness involving the arm and the leg.

Additional facts necessary for decision are set forth in the opinion.

*Attorney General Rufus L. Edmisten, by Associate Attorney Thomas M. Ringer, Jr., for the State.*

*Bob Scott for defendant appellant.*

MORRIS, Judge.

Because defendant has failed to argue assignments of error Nos. 2, 5, 6, 7, 8 and 9, they are deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

In his first assignment of error defendant challenges the admissibility of the testimony of the investigating officer concerning statements made to him by the defendant prior to the time defendant was advised of his rights. Defendant maintains that at the time these statements were made, defendant was in custody and being subjected to interrogation without having been given the warning required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). We do not agree. The Supreme Court of this State has consistently held that the *Miranda* warnings are *only* required when the defendant is being subjected to "custodial interrogation". E.g., *State v. Muse*, 280 N.C. 31, 185 S.E. 2d 214 (1971) ; *State v. Fletcher* and *State v. St. Arnold*, 279 N.C. 85, 181 S.E. 2d 405 (1971), and cases cited therein. We find nothing in the record to indicate that the defendant was in custody at the time he made the incriminating statements. Questions asked by the investigating officer were not accusatory in nature, nor is there any evidence the officer even suspected the defendant of having committed a crime at that time. On these facts we feel the case of *State v. Gladden*, 279 N.C. 566, 570, 184 S.E. 2d 249 (1971), is instructive. There, Chief Justice Bobbitt, quoting extensively from *Miranda* said:

"*Miranda* involved custodial interrogations. The majority opinion, delivered by Chief Justice Warren, states: 'By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citations omitted.] The opinion states further: 'Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interroga-

State v. Chappell

tion is not necessarily present.' [Citations omitted.] The opinion also states: 'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.' [Citations omitted.]"

Here, defendant obviously was not in custody at the time he made the incriminating statements, and the statements were clearly admissbile. Defendant's first assignment of error is therefore overruled.

Defendant next contends the trial court erred in overruling his objection to questions asked by the Assistant District Attorney on cross-examination of the defendant concerning statements made by his wife following the shooting. A review of the record reveals that this same evidence was received by stipulation and without objection, as part of a statement made by the defendant to the police. Defendant was not prejudiced by the admission of this testimony in any way, and his assignment of error is therefore overruled.

We have carefully reviewed the defendant's remaining assignments of error and find them to be without merit. Defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and HEDRICK concur.